1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTI LEANN DUKE, | Case No.  1:12-cv-00449-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 16, 20, 21) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Kristi Leann Duke ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits and supplemental security income pursuant to Title XVI of the Social Security Act.   The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from degenerative disc disease of the lumbar spine; fibromyalgia; inflammatory polyarthritis; a medial meniscal tear of the left knee; obstructive sleep apnea; and depression.  (AR 12.)  For the reasons set forth below, Plaintiff's social security appeal shall be

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (*See* ECF Nos. 10, 11.)

1    denied.

2                                    II.

3                 FACTUAL AND PROCEDURAL BACKGROUND

4         Plaintiff applied for disability insurance benefits and supplemental social security income

5    on August 21, 2008.  (AR 10.[2])  The claims were originally denied on November 19, 2008, and

6    denied on reconsideration on March 3, 2009.  (AR 62-66, 70-74.)  Plaintiff requested and

7    received a hearing before Administrative Law Judge Patricia Leary Flierl ("the ALJ"), which took

8    place on September 1, 2010.  (AR 18-35.)  On September 23, 2010, the ALJ found that Plaintiff

9    was not disabled.  (AR 7-17.)  The Appeals Council declined Plaintiff's request for review on

10   February 1, 2012.  (AR 1-3.)

11        A.       Hearing Testimony

12        Plaintiff was born on October 15, 1974.  (AR 20.)  Plaintiff is a high school graduate and

13   has only worked as a certified nursing assistant.  (AR 21, 32.)  The date of onset of Plaintiff's

14   disability is August 2008.  (AR 21.)  Plaintiff was last employed as a certified nursing assistant at

15   Wasco State Prison.  (AR 21.)  Plaintiff stopped working due to having trouble staying awake on

16   suicide watch.  (AR 22.)  At that time, Plaintiff was first diagnosed with lupus.  (AR 22.)  While

17   working as a certified nursing assistant, Plaintiff had swelling in her extremities and was unable

18   to get out of bed the day after working a full shift due to pain.  (AR 23.)

19        Plaintiff resides in a home with her husband and her seventy-six year old mother.  (AR 20,

20   26.)  Plaintiff's husband is working.  (AR 31.)  Plaintiff's mother is not in good health, but is able

21   to take care of herself.  (AR 26.)  Plaintiff's mother helps take care of Plaintiff by driving Plaintiff

22   to doctor appointments, taking Plaintiff's wheelchair in and out of the truck of the car, and

23   pushing Plaintiff's wheelchair.  (AR 26.)  Plaintiff's mother has been helping her for the last

24   several years and quit her job in 2010 to help Plaintiff full-time because Plaintiff needs someone

25   to watch her shower and, on occasion, dress due to fear that Plaintiff will fall.  (AR 27.)

26        Plaintiff is able to dress herself, but has difficulty bending and wears slip on shoes

27   _____

     [2] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record).  (See

28   ECF No. 12.)

                                     2

1   because it is hard for her to tie her shoes and it is hard for her to bend due to her back and hip

2   pain.  (AR 30.)  When Plaintiff is not attending appointments, she spends her day resting, either

3   sitting on the couch or lying down.  (AR 30.)  Plaintiff used to do crafts, but she no longer can.

4   (AR 30.)

5         Plaintiff has been diagnosed with rheumatoid arthritis, lupus, and fibromyalgia.  (AR 23-

6   24.)  Plaintiff is taking Percocet, Methadone, Plaquenil, Neurontin, and Soma which no longer

7   work to relieve her pain because she has been taking them for so long.  (AR 30.)  For financial

8   reasons, Plaintiff has just recently begun taking the Plaquenil; and it will take ninety days to get

9   into her system.  (AR 31.)  Plaintiff also takes Abilify and Klonopin for depression and anxiety.

10   (AR 31.)  Plaintiff started attending counseling around July.  (AR 31.)  Plaintiff felt it was too

11   soon to tell if the counseling is working because she still has bouts of depression.  (AR 31.)

12         At the time of the hearing, Plaintiff's doctors had been unable to diagnose the cause of her

13   sleepiness and fatigue.  (AR 24.)  Plaintiff has problems with her hands becoming swollen so she

14   is unable to grasp things and has trouble opening medication bottles.  (AR 25.)  Plaintiff has to

15   have someone open her medication, even those that are not childproof, when her condition flares

16   up.  (AR 25.)  Plaintiff has continuous flare-ups with an occasional two to three day break after

17   she has spent a lot of time resting in bed.  (AR 25-26.)  Plaintiff has difficulty cutting up food so

18   she either eats food that does not need to be cut or her mother cuts her food for her.  (AR 29-30.)

19         Plaintiff began having fainting spells around the end of January 2010.  (AR 24.)  Plaintiff

20   would suddenly just black out and "fall like a sack of potatoes."  (AR 24.)  Plaintiff falls once a

21   day or every other day.  (AR 24-25.)  If Plaintiff overexerts herself or gets over heated she "end[s]

22   up on the ground."  (AR 25.)  Plaintiff gets over exerted when she tries to do too much, such as

23   running too many errands.  (AR 25.)  Plaintiff attends a lot of doctor appointments and they are

24   usually in the afternoon.  (AR 25.)  Plaintiff's driver's license was taken away by her doctor due to

25   the fainting spells in April of 2010.  (AR 25.)

26         At the time of the hearing, Plaintiff was waiting to see a surgeon regarding surgery on her

27   knee.  (AR 22.)  Plaintiff had a Bi-Pap machine that she used all the time.  (AR 22.)  Plaintiff

28   arrived at the hearing using a scooter that had been prescribed by Dr. Trobisch in 2010.  (AR 22-

23, 27.)  Prior to getting the wheelchair, although it was not prescribed, Plaintiff was using a walker because she was falling and hurting herself.  (AR 28.)

Plaintiff fell and injured her knee in 2007.  (AR 28.)  About three weeks prior to the hearing, Plaintiff fell, reinjuring her knee, and has been wearing a knee brace to stabilize her kneecap.  (AR 28-29.)  Plaintiff's knee pops out of place causing pain and her knee collapses causing her to fall.  (AR 28.)  Plaintiff is unable to stand at all without leaning on something.  (AR 29.)  When Plaintiff stands her back starts hurting and her feet swell and start burning.  (AR 29.)  Plaintiff can sit for about fifteen minutes without shifting.  (AR 29.)  Plaintiff is able to walk unassisted for short periods.  (AR 29.)

Linda Ferra, a vocational expert ("VE"), also testified at the hearing.  (AR 33-34.)  The VE testified that Plaintiff does have transferrable skills to other sedentary and unskilled jobs.  (AR 33-34.)  The VE was asked to opine about the job prospects of an individual with several hypothetical limitations.  First, the VE was asked a hypothetical with the following limitations:

A person of claimant's age, education, and work history;

Limited to sedentary work;

Can never climb, kneel, crouch, crawl;

Can occasionally stoop;

Can do no forceful gripping or grasping bilaterally; and

Is limited to simple repetitive tasks.

(AR 33.)

The VE opined that there was no past relevant work that could be performed.  However, the VE stated that there were jobs that could be performed by this individual, such as an assembler (DOT 734.687-018, 2,600 jobs statewide and 26,000 nationally); charge account clerk (DOT 205.367-014, 3,600 jobs statewide and 36,000 nationally); and order clerk (DOT 209.567-014, 2,600 jobs statewide and 26,000 nationally).  (AR 33-34.)

Second, the VE was asked to assume the same hypothetical with the additional limitation of no standing or walking except to and from a work station.  (AR 34.)  The VE opined there would be no past relevant work, but the individual could perform the same jobs as the first

4

hypothetical.  (AR 34.)  Third, the VE was asked to assume the same second hypothetical except that the individual could only occasionally use their hands bilaterally.  (AR 34.)  The VE opined there would be no jobs for this individual.  (AR 34.)

### B.   ALJ Findings

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  Specifically, the ALJ found that:

> The claimant has had the following severe impairments: degenerative disc disease of the lumbar spine; fibromyalgia; inflammatory polyarthritis; ; [sic] a medial meniscal tear of the left knee; obstructive sleep apnea; and depression (20 CFR 404.1520(c) and 416.920(c)).  (AR 12.)

> The claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (AR 13.)

> After careful consideration of the entire record, the undersigned finds that the claimant has had a residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for the following: able to perform only simple, repetitive tasks; unable to perform any climbing, kneeling, crouching, or crawling; able to perform only occasional stooping; unable to perform forceful gripping and grasping; and aside from standing and walking required to get to and from an assigned work station, unable to perform any standing and walking.  (AR 13-14.)

> The claimant has been unable to perform her past relevant work (20 CFR 404.1565 and 416.965).  (AR 15.)

> Transferability of job skills is not material to the determination of disability because using the Medical-Vocation Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 4040, Subpart P, Appendix 2).  (AR 16.)

> Considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).  (Id.)

> The claimant has not been under a disability, as defined in the Social Security Act, from August 5, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).  (AR 17.)

///

///

///

### III.

1                                    **LEGAL STANDARD**

2          Congress has provided that an individual may obtain judicial review of any final decision

3    of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

4    reviewing findings of fact in respect to the denial of benefits, this court "reviews the

5    Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

6    disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.

7    Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a scintilla,

8    but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal

9    quotations and citations omitted).  "Substantial evidence is relevant evidence which, considering

10   the record as a whole, a reasonable person might accept as adequate to support a conclusion."

11   Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health &

12   Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

13         "[A] reviewing court must consider the entire record as a whole and may not affirm

14   simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting

15   Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

16   this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

17   for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

18   susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

19   upheld.")

20                                          **IV.**

21                              **DISCUSSION AND ANALYSIS**

22         Plaintiff contends that the ALJ erred by understating her physical limitations related to

23   her hands and failing to develop the record regarding her mental limitations.  Additionally,

24   Plaintiff argues that there is a conflict between the jobs which the VE found Plaintiff could

25   perform and the Dictionary of Occupational Titles ("DOT").

26         Defendant replies that, while Plaintiff contends that the ALJ did not take into account her

27   subjective physical limitations, Plaintiff does not dispute the ALJ's findings that Plaintiff was not

28   entirely credible.  Defendant states that the ALJ reasonably took account of Plaintiff's credible

1   physical limitations and his findings are supported by substantial evidence.  The ALJ properly

2   noted the lack of longitudinal mental health treatment and since there was no ambiguous

3   evidence or inadequacy in the record, the ALJ did not need to further develop the record.  The

4   ALJ properly relied on the VE's testimony to find that there significant jobs in the California

5   economy that Plaintiff would be able to perform; and the Court should affirm the decision of the

6   ALJ.

7          Plaintiff replies that substantial evidence shows that her physical and mental limitations

8   render her unable to perform any of the occupations cited by the VE.  Plaintiff contends that the

9   determination of benefits should not be based on the ALJ's interpretation of the medical evidence

10  because he is not a qualified medical professional.  Therefore, this action should be remanded for

11  a consultative mental health examination and further analysis of Plaintiff's mental impairments.

12         **A.      The ALJ Did Not Understate Plaintiff's Hand Limitations**

13         Plaintiff claims that despite finding that the record supports Plaintiff's complaints of hand

14  pain, the ALJ made no finding regarding the frequency of general hand use.  Plaintiff argues that

15  based on the record as a whole, she would likely be unable to perform more than occasional

16  work with her hands.  Plaintiff contends that substantial evidence shows that she would not be

17  able to perform the handling and fingering that would be involved in any of the jobs which the

18  ALJ found Plaintiff would be able to perform.

19         Defendant responds that while the record demonstrates the consistency of Plaintiff's pain

20  complaints and her pursuit of treatment, the ALJ also found that Plaintiff was not entirely

21  credible and gave substantial reasons for discounting Plaintiff's allegations.  Defendant argues

22  that the ALJ gave Plaintiff the benefit of the doubt and credited her subjective complaints in

23  finding that she retained the ability to perform only a limited range of sedentary work involving

24  simple, repetitive tasks, minimal standing and walking to get to and from her assigned work

25  station and no forceful grasping or gripping.  Defendant contends that Plaintiff's complaints

26  involved essentially manipulative activities such as gross handling and grasping due to her

27  weakened grip and her fine manipulation skills were largely intact.  Defendant argues that the

28  ALJ reasonably took into account Plaintiff's credible physical limitations; and his finding is

1  supported by substantial evidence and is free of error.

2      Plaintiff replies that the Commissioner ignores Dr. Georgis' finding that Plaintiff could

3  only perform frequent manipulative activities such as handling and grasping that would preclude

4  her ability to work as an assembler.  Additionally, the Commissioner presents no evidence that

5  Plaintiff could perform work as a charge account clerk or order clerk which require Level 3

6  reasoning.  Plaintiff argues that the ALJ's failure to make a finding regarding the frequency that

7  she could perform hand manipulations warrants reversal.

8          1.     ALJ's Findings Regarding Plaintiff's Hand Limitations

9      The ALJ found "[t]he record documents the consistency of the claimant's pain complaints

10 and the consistency of her pursuit of related medical treatment.  Further, the record reflects her

11 consistent requirement of narcotics-based pain medication."  (AR 14.)  However, the ALJ also

12 noted that "the record does not include any direct assessment of the claimant's physical residual

13 functional capacity by a treating physician."  (AR 14.)  The ALJ also noted that the October 2008

14 orthopedic consultative examination found Plaintiff's residual functional capacity in terms of

15 light level exertion and that Plaintiff was able to perform frequent manipulative activities; and a

16 November 2008 report by a State Agency physician describes Plaintiff's residual functional

17 capacity in comparable terms.  (AR 15.)  The ALJ gave Plaintiff some benefit of the doubt and

18 found that she was unable to perform forceful gripping or grasping.  (AR 15.)

19         2.     Medical Records Regarding Plaintiff's Hand Complaints

20     In regards to Plaintiff's hand complaints, Plaintiff's medical records reveal that on

21 October 5, 2007, Plaintiff was examined by Dr. Palencia at the Pain Institute of California and

22 complained of aching pain in both hands.  Dr. Palencia referred Plaintiff to a specialist for

23 evaluation.  (AR 206.)

24     On October 22, 2007, Plaintiff was seen by Dr. Bhinder.  Dr. Bhinder noted that Plaintiff

25 was reporting puffiness and swelling in the fingers, ankles, and feet that was marked in the

26 morning.  The stiffness lasted for three to four hours.  (AR 233.)  Joint examination revealed

27 tenderness over the proximal interphalangeals of both hands. Dr. Bhinder diagnosed fairly active

28 fibromyalgia, mild symmetrical inflammatory polyarthritis, and a family history of rheumatoid

8

arthritis.  (AR 234.)

On February 12, 2008, Plaintiff was examined at Dr. Bhinder's office and reported that she had not noticed much joint swelling.[3]  She was found to have mild tenderness over the proximal interphalangeals bilaterally.  Plaintiff had fair control of her symptoms on the current regimen.  The rest of her examination was unremarkable.  (AR 237.)

On May 12, 2008, Plaintiff was examined at Dr. Bhinder's office and stated she had noticed puffiness in her hands.  Examination revealed mild tenderness over a few of the interphalangeal joints bilaterally.  Plaintiff had tender points of fibromyalgia.  (AR 236.)

Plaintiff was seen by Dr. Bhinder on August 13, 2008, and reported prolonged morning stiffness, more pronounced in the hands and feet.  Plaintiff also noted swelling of her hands and feet in the morning and towards the end of the day.  Examination revealed tenderness in the wrists and ankles.  Dr. Bhinder found Plaintiff to have active fibromyalgia and active inflammatory polyarthritis.  (AR 235.)

Plaintiff was seen by Dr. Fischer on September 16, 2008, complaining of exacerbating pain in the lower back.  Plaintiff also complained of swelling in her ankles and wrists.  (AR 271.)

On October 21, 2008, Plaintiff was examined by Dr. Georgis.  Plaintiff stated that in October 2007 her hands spontaneously started aching and they cramp.  Plaintiff reported that she had gotten worse with increased swelling.  (AR 248.)  Plaintiff had mild tenderness to touch over the finger joints bilaterally without swelling, effusion, deformity, instability, or redness.   (AR 250-51.)  Plaintiff's grip strength was weakened, grade 4/5.  Her effort seemed less due to Plaintiff worrying about resultant pain.  Plaintiff's fine motor use was tested and appeared intact.  Plaintiff was able to write her name and maneuver the zipper of her sweater up and down without apparent problem.  Plaintiff was diagnosed with bilateral hand pain, probably due to arthritis.  (AR 251.)  Plaintiff was found to be able to lift or carry 20 pounds occasionally and 10 pounds frequently due to her decreased grip strength bilaterally.  Further, Dr. Georgis found Plaintiff would be limited to frequent manipulative activities such as handling and grasping

---

[3] The medical records do not specifically identify who the treating provider was on February 12, 2008 or May 12, 2008.  Initials of SKB on the forms lead to the inference that Plaintiff was seen by Dr. Sumeet K. Bhinder.

1  based on her decreased grip strength bilaterally.  (AR 252.)

2     On November 4, 2008, Dr. Frye performed a physical residual functional capacity

3  assessment of Plaintiff and found that Plaintiff's ability to push or pull was limited in her upper

4  body.  (AR 254.)  Plaintiff would be limited to frequent, not constant, handling and fingering due

5  to weakened grip strength.  (AR 255.)  Dr. Frye found Plaintiff to be partially credible and that

6  her weakened grip strength would limit her handling and grasping.  (AR 261.)

7     On November 4, 2008, Plaintiff was seen by Dr. Bhinder reporting a significant

8  worsening of her joint pain symptoms.  Plaintiff had developed swelling of her lower extremities

9  and hands over the prior few weeks.  Dr. Bhinder noted mild to moderate synovitis in MCPs of

10  both hands.  Plaintiff was diagnosed with symmetrical inflammatory polyarthritis in rheumatoid

11  arthritis distribution and was placed on oral prednisone.  (AR 266.)

12     Plaintiff was seen by Dr. Bhinder on November 26, 2008, and reported that she had

13  noticed significant improvement in her arthritis symptoms due to taking prednisone.  Plaintiff

14  still had residual stiffness.  (AR 265.)

15     On March 3, 2009, Dr. Kammen performed a case analysis.  (AR 272-274.)  Dr. Kammen

16  found that Plaintiff was being treated by a Rheumatologist and the treatment would control her

17  disease if dosed appropriately.  (AR 274.)

18     On June 30, 2010, Plaintiff was seen by Dr. Bhinder.  Plaintiff stated her arthritis was

19  worse and reported morning stiffness lasting 15 to 30 minutes.  Plaintiff also stated she feels

20  achier and has prolonged morning stiffness.  Dr. Bhinder found no clubbing, cyanosis or edema

21  of the extremities.  (AR 286.)

22     3.     Whether Plaintiff's Hand Limitation Is Supported By Substantial Evidence

23     Plaintiff contends that she is limited to only occasional use of her hands and, therefore,

24  there are no jobs that she can perform entitling her to Social Security benefits.  Examination of

25  the records of the treating and examining physicians supports the ALJ's determination that

26  Plaintiff was limited to simple, repetitive tasks and no forceful grasping or gripping.

27     The factors the ALJ considers in weighing a claimant's credibility regarding the reported

28  symptoms are set forth in the Social Security regulations.  The ALJ considers the claimant's daily

10

1   activities; the location, duration, frequency, and intensity of the claimant's pain or other

2   symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness, and side

3   effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms;

4   treatment, other than medication, the claimant receives or has received for relief of her pain or

5   other symptoms; any measures the claimant uses or has used to relieve her pain or other

6   symptoms; and other factors concerning the claimants functional limitations and restrictions due

7   to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

8         The ALJ credited Plaintiff's subjective complaints to the extent that she was found to

9   have a residual functional capacity, with respect to her hands, of being unable to perform

10   forceful gripping and grasping. Plaintiff complained of swelling, pain, and stiffness in her hands

11   beginning in October 2007. The records of Plaintiff's treating providers reveal that on October

12   22, 2007, Dr. Binder performed a joint examination and found Plaintiff had tenderness over the

13   proximal interphalangeals of both hand. On February 12, 2008, Plaintiff was examined and was

14   found to have mild tenderness over the proximal interphalangeals bilaterally and she had fair

15   control of her symptoms on her medication regimen. On May 12, 2008, examination revealed

16   mild tenderness over a few of the interphalangeal joints bilaterally. On August 13, 2008, Dr.

17   Bhinder examined Plaintiff and found she had tenderness in the wrists and ankles.

18         On November 4, 2008, Plaintiff was seen by Dr. Bhinder who noted mild to moderate

19   synovitis in MCPs of both hands. Plaintiff was diagnosed with symmetrical inflammatory

20   polyarthritis in rheumatoid arthritis distribution and was placed on oral prednisone. When

21   Plaintiff returned to Dr. Bhinder on November 26, 2008, she reported that she had noticed

22   significant improvement in her arthritis symptoms due to taking prednisone, but still had residual

23   stiffness. On June 30, 2010, Plaintiff saw Dr. Bhinder and reported that her stiffness lasted from

24   15 to 30 minutes in the morning and then, during the same visit, stated that she had prolonged

25   morning stiffness. Dr. Bhinder noted no edema and there is no record of tenderness or pain in

26   Plaintiff's hands.

27         The examining physicians consistently found Plaintiff to have only mild tenderness and

28   mild to moderate swelling in her hands. While the records do reflect that Plaintiff complained of

1    stiffness, nothing in the records indicates that she was only occasionally able to use her hands as
2    argued by Plaintiff.

3         Plaintiff argues that the ALJ erred by failing to address Dr. Georgis' opinion that Plaintiff
4    was limited to frequent handling and grasping.  The ALJ does not have to adopt or discuss every
5    portion of a doctor's report.  Luckett v. Astrue, No. 2:09-cv-00037 KJN, 2010 WL 3825703, at
6    *6 (E.D.Cal. Sept. 28, 2010).  When Plaintiff was examined by Dr. Georgis, she was found to be
7    limited to frequent manipulative activities such as handling and grasping based on her decreased
8    grip strength bilaterally.   The ALJ considered Dr. Georgis' opinion and did not adopt the
9    limitation that Plaintiff would only be able to perform frequent manipulative activities due to her
10   decreased grip strength.  The ALJ found only that Plaintiff would be unable to perform forceful
11   gripping and grasping, which is directly related to the lack of grip strength that is reflected in the
12   record.

13        The ALJ considered the medical records which show that Plaintiff's treating providers
14   had found only tenderness and mild to moderate swelling in her hands.  While Dr. Georgis
15   opined that Plaintiff would only be able to perform frequent manipulative activities due to lack
16   of grip strength, Dr. Georgis' clinical findings reflect that Plaintiff had very mild tenderness to
17   touch over the finger joints and metacarpophalangeal joints bilaterally, without any significant
18   swelling, effusion, deformity, instability or redness.  Plaintiff's grip strength was weakened, but
19   Dr. Georgis stated her effort seemed somewhat less due to Plaintiff worrying about resultant
20   pain.  Plaintiff's fine motor skills were intact and she was able to write her name and maneuver
21   the zipper of her sweater without any problem.  The medical record is not inconsistent with the
22   finding of the ALJ that Plaintiff could perform simple, repetitive tasks and was unable to perform
23   forceful gripping and grasping.  Based upon the record as a whole, the Court finds that the ALJ
24   did not err by not finding Plaintiff limited to frequent handling.

25        The limitation that the ALJ found was directly related to the lack of grip strength which is
26   supported by the clinical findings.  The Court finds that substantial evidence supports the ALJ's
27   determination that Plaintiff could perform simple, repetitive tasks and was unable to perform
28   forceful gripping and grasping.

**B.     The ALJ Did Not Err in Determining Plaintiff's Mental Health Status**

Plaintiff argues that the ALJ had a duty to further develop the record on Plaintiff's mental health issues and did not do so because he did not order a consultative mental examination.

1.     ALJ's Findings Regarding Plaintiff's Mental Health Issues

The ALJ found that Plaintiff's mental health records showed a primary impairment of major depressive disorder.  (AR 13.)  The ALJ determined that Plaintiff's "mental impairments, considered singly and in combination, have not met or medically equaled the criteria of listing 12.04."  (AR 13.)  Plaintiff had mild restriction in her daily living activities, mild difficulties with social functioning, and mild to moderate difficulties with concentration, persistence or pace. There had been no episodes of decompensation which have been of extended duration.  Plaintiff mental impairments do not meet the criteria of "paragraph B."  (AR 13.)  Plaintiff also fails to meet the criteria of "paragraph C."  (AR 13.)

In evaluating Plaintiff's mental health claim, the ALJ found:

> in an evaluation dated August 2010, Dr. L. Grace assesses the claimant's GAF as 40, indicative of markedly limiting mental symptoms. Further[,] Dr. Grace opines that the claimant has had significant impairment in performing several work-related mental functions, including a "poor" ability to complete a normal work schedule without interruptions from psychologically based symptoms. Inconsistently, Dr. Grace nonetheless indicates that the claimant retains a "good" ability to perform activities within a schedule and maintain regular attendance. Also notable, in her assessment, Dr. Grace specifically indicates that the claimant has "mild" impairment in concentration, memory, and judgment.

> Dr. Grace's opinion is not supported by a longitudinal history of treatment records.  Instead the record documents only fleeting mental health treatment, beginning July 12, 2010.  Subsequently, treatment is only shown for July 29, 2010, although Dr. Grace refers to a visit on August 23, 2010.

> At a minimum, the record does not document persistent and significantly limiting symptoms and clinical findings consistent with the degree of limitation assessed by Dr. Grace.  And, as suggested above, her opinion is internally inconsistent.  In consideration of these circumstances, her opinion is rejected.

(AR 14 (citations omitted).)

2.     Mental Health Treatment Records

On February 13, 2009, Plaintiff was seen by Dr. Bhinder and reported having anxiety attacks, which were worse at night.  Plaintiff was started on a trial of Clonazepam.  (AR 289.) Plaintiff was seen on October 22, 2009; January 22, 2010; April 22, 2010; and June 24, 2010 by

Dr. Fischer, and the medical records indicate that she was taking Paxil. The record does not reflect when Plaintiff began taking Paxil or who prescribed it. There are no notations in these records regarding any depression or mental health issues. (AR 275, 276, 277, 278.)

On June 30, 2010, Plaintiff was seen by Dr. Bhinder. The medical record shows that Plaintiff was taking Paxil and was to continue taking medication for anxiety. (AR 286.) There are no other notes regarding any depression or mental health issues in Plaintiff's medical records prior to July 12, 2010.

Plaintiff was initially seen on July 12, 2010, by Dr. Grace at the Kern County Mental Health Department for a psychiatric evaluation and assessment. (AR 405-415.) Plaintiff's mood was depressed; she was talkative; her affect was restricted; and her cognition was normal. (AR 408-410.) Plaintiff was diagnosed with major depressive disorder and anxiety. (AR 411.) Plaintiff was assessed with a GAF of 50. (AR 413.) Plaintiff's impairment due to mental disorder was determined to be: independent living rating - moderate; social relationships rating - mild; vocational/education rating - severe; physical care rating - mild. (AR 414.)

Plaintiff was seen on July 29, 2010, due to having suicidal feelings and trying to suffocate herself by tying a shoelace, and later in the day a curtain, around her neck. It was found that Plaintiff was not a current threat of suicide and she returned home. (AR 403.)

On August 30, 2010, a short form evaluation for mental disorders was completed by Dr. Grace. (AR 399-402.) The report indicated that Plaintiff was initially seen for her mental health issues on July 12, 2010, and she was seen weekly through August 23, 2010. Plaintiff was diagnosed with major depressive disorder, recurrent, moderate, without psychotic features, and social phobia. (AR 399.) The report states that Plaintiff has mild impairment to her memory, concentration, and judgment. (AR 399-400.) Plaintiff's ability to carry out instructions and maintain concentration, attention and persistence was fair. Plaintiff's ability to perform activities within a schedule and maintain regular attendance was good. Her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms was poor. (AR 401.)

3.      The ALJ Did Not Fail to Develop the Mental Health Record

1    Plaintiff contends that due to Plaintiff's mental health issues, the ALJ had a heightened
2    duty to develop the record because it is inadequate to allow for proper evaluation of the
3    evidence.   Defendant replies that the duty to further develop the record, including ordering a
4    consultative mental examination, is triggered where there is ambiguous evidence or when the
5    record is inadequate for proper evaluation of the evidence.   Defendant states that Plaintiff has not
6    disputed the finding that there were inconsistencies in Dr. Grace's report and Plaintiff only
7    received fleeting mental health treatment; therefore, there is no basis for her argument that there
8    was a need to further develop the record.

9    When applying for disability benefits, the claimant has the duty to prove that she is
10   disabled.   42 U.S.C. § 423(c)(5)(A).   The ALJ has an independent "duty to fully and fairly
11   develop the record and to assure that the claimant's interests are considered."   Widmark v.
12   Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th
13   Cir. 1983)).   The ALJ has a duty to further develop the record where the evidence is ambiguous
14   or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence.
15   Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144,
16   1150 (9th Cir. 2001).   Further, the ALJ's duty to fully develop the record is heightened where the
17   claimant may be mentally disabled and, therefore, unable to protect her own interests.   Higbee v.
18   Sullivan, 975 F.2d 558, 562 (9th Cir. 1992).   He must be especially diligent in ensuring that
19   favorable as well as unfavorable facts and circumstances are elicited."   Higbee, 975 F.2d at 561
20   (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)).

21   The ALJ must provide clear and convincing reasons for rejecting the uncontradicted
22   opinion of a claimant's examining physician.   Widmark, 454 F.3d at 1066.   In this instance, the
23   ALJ found that Plaintiff suffered from the severe impairment of depression, but rejected the
24   treating doctor's opinion regarding the extent that it would limit her ability to work.   The ALJ
25   gave three specific reasons for rejecting the limitations stated by the doctor: 1) the opinion is
26   internally inconsistent; 2) the opinion is not supported by a longitudinal history of treatment
27   records; and 3) Plaintiff received only fleeting mental health treatment.   Plaintiff argues that the
28   ALJ had a duty to further develop the record because the ALJ is not a qualified medical

professional and should not make medical conclusions without the assistance of a medical professional.

At the hearing, Plaintiff's counsel solicited testimony from Plaintiff on her mental health issues as follows:

> Q    Okay.  And you're also taking Abilify and Klonopin?
> A    Yes.
> Q    And what are those for?
> A    Depression and anxiety.
> Q    And does that mean you're getting counseling?
> A    Yes.
> Q    How long ago did you start counseling?
> A    I want to say around July?
> Q    Okay. Do you think it is doing you any good?
> A    To me right now it's too soon to tell because I still have my thoughts of, you know bouts of depression.

(AR 31.)

Viewing the record as a whole, the Court does not find that the ALJ erred by rejecting the limitations stated by Dr. Grace without further development of the record.  The record shows that Plaintiff did not seek any treatment by a mental health provider prior to July 12, 2010.  Further, prior to her initial visit with the mental health clinic, Plaintiff's medical records only show two instances where mental health issues are addressed and they are only fleeting references to anxiety.[4]

In this instance, the ALJ had several years of medical records before him for review, and there is no evidence of any severe mental impairment prior to the initial visit with Dr. Grace, approximately seven weeks before the hearing in this matter.  The ALJ found that Dr. Grace's opinion was internally inconsistent because she indicated a GAF of 40 and opined that Plaintiff "had significant impairment in performing several work-related mental functions, including a 'poor' ability to complete a normal work schedule without interruptions from psychologically based symptoms."  (AR 13.)  But Dr. Grace also found that Plaintiff retained "a 'good' ability to

---

[4] While Plaintiff argues that Plaintiff sought mental health treatment only after her mother found that she was attempting to commit suicide, the record refutes this.  Plaintiff was initially seen at the mental health clinic on July 12, 2010.  (AR 405-416.)  Plaintiff was seen on July 28, 2010, because her mother stated she had found her twice with shoestrings and curtains around her neck.  (AR 403.)  The Court does not discount the seriousness of Plaintiff's medical condition due to this discrepancy in Plaintiff's argument.

1    perform activities within schedule and maintain regular attendance," and had only mild

2    impairment in concentration, memory, and judgment.  (AR 13.)  The ALJ found that the record

3    did "not document persistent and significantly limiting symptoms and clinical findings consistent

4    with the degree of limitation assessed by Dr. Grace."  (AR 13.)

5           The Commissioner has broad latitude in whether to order a consultative examination and

6    the government is not required to bear the expense for an examination of every claimant.  Reed

7    v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001).  There are cases in which a consultative

8    examination would be required, "including those in which additional evidence needed is not

9    contained in the records of the claimant's medical sources , and those involving an ambiguity or

10   insufficiency in the evidence that must be resolved."  Reed, 270 F.3d at 842 (internal punctuation

11   and citations omitted.)

12          A specific finding of ambiguity or inadequacy in the record is not required to trigger the

13   necessity to further develop the record where the record itself establishes the ambiguity or

14   inadequacy.  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).  The facts in this case are not

15   similar to other instances in which the ALJ was found to have a duty to further develop the

16   record.  See Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by relying on testimony of physician

17   who indicated more information was needed to make diagnosis); McLeod, 640 F.3d at 887 (ALJ

18   erred by failing to obtain disability determination from the Veteran's Administration); Bonner v.

19   Astrue, 725 F.Supp.2d 898, 901-902 (C.D.Cal. 2010) (ALJ erred where failed to determine if

20   claimants benefits were property terminated or should have been resumed after his release from

21   prison); Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-19 (N.D.Cal. 2006) (ALJ erred by failing

22   to develop record where he relied on the opinion of a physician who recognized he did not have

23   sufficient information to make a diagnosis).

24          The record here included Plaintiff's medical records from 2005 through 2010, including

25   records within a month of the hearing date.  The record does not indicate that the ALJ or any

26   medical provider found that the evidence was insufficient to make a determination.  Further,

27   Plaintiff's testimony at the hearing was that she suffered from bouts of depression and was

28   unable to tell if therapy was helping her.  The ALJ did not determine that additional examination

or information was needed to make his decision; and it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's.

Finally, even were the Court to find that the ALJ erred by failing to further develop the record, it would be harmless error and would not warrant reversal in this instance.  "[H]armless error applies in the Social Security context."  Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006).  Harmless error occurs where the error does not prejudice the claimant, and no reasonable ALJ could have reached a different disability determination.  Stout, 497 F.3d at 1056.

A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1).  The ALJ rejected Dr. Grace's opinion as not supported by a longitudinal history of treatment records and because Plaintiff received only fleeting mental health treatment.   Based upon Plaintiff's medical records, there is no evidence of severe depression prior to July 12, 2010.  In the report dated August 30, 2010, Dr. Grace stated that:

> Generally prognosis for major depressive episode is 6 months disability but this patient has complicating stressors that might cause depression to be persistent such as poor physical health.  Patient is showing gradual improvement in therapy [and] is now able to do some of her own ADL's and has stopped cutting herself, [sic] started to exercise.  She also shows some improvement in mood [and] appearance.

(AR 401.)

Plaintiff's serious mental health issues developed sometime in July 2010, and, as Dr. Grace stated, could generally be expected to last six months.  While Dr. Grace stated that some factors were present that **might** cause persistent depression, Plaintiff was showing gradual improvement.  Plaintiff has not shown that her mental disability can be expected to last for a continuous period of not less than 12 months. [5]   42 U.S.C. § 423(d)(1).

Accordingly, the Court finds that were any error to be found it would be harmless; and

---

[5] If Plaintiff's mental disability is determined to be expected to last more than twelve months, Plaintiff will be able to submit a new application for social security disability benefits based upon a change in her mental condition.  Lester, 81 F.3d at 827.

1    Plaintiff's appeal on the issue of the ALJ's determination of Plaintiff's mental limitations and

2    failure to further develop the mental health record is denied.

3         C.      **The ALJ Did Not Err In Determining Plaintiff Could Perform Substantial**
                  **Gainful Work**
4

5         Plaintiff argues that the ALJ erred in finding that Plaintiff was capable of performing

6    substantial gainful work in the national economy.  The basis of Plaintiff's argument is that due to

7    the errors in determining Plaintiff's hand and mental capacity limitations, Plaintiff would be

8    unable to perform the jobs identified by the VE at the hearing.  As discussed above, the Court

9    finds that the ALJ did not err in determining Plaintiff's hand limitations or failing to find Plaintiff

10   had a qualifying mental health disability.

11        At step five, if the claimant is unable to perform past work, the Commissioner must

12   decide if the claimant is able to do any other work.  Tackett v. Apfel, 180 F.3d 1094, 1099 (9th

13   Cir. 1999).   At this point, the burden shifts to the Commissioner to show that, taking into

14   consideration the claimant's residual functional capacity, age, education and work experience, the

15   claimant can perform some other work that exists in significant numbers in the national

16   economy.  Tackett, 180 F.3d at 1100.  To determine this issue the Commissioner relies on the

17   DOT for information about the requirements for jobs in the national economy; and the testimony

18   from a VE to obtain occupational evidence.  Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir.

19   2007).   Where a conflict exists between the DOT and the VE's testimony, the ALJ must

20   determine whether the VE's explanation for the conflict is reasonable and whether any basis

21   exists for relying on the VE rather than the DOT.  Massachi, 486 F.3d at 1153.

22        Here, the ALJ considered the testimony of the VE who opined that a person of Plaintiff's

23   residual functional capacity, age, education, and work experience would be able to  perform

24   work that is available in significant numbers in the national economy, such as an assembler,

25   charge account clerk, and order clerk.  Plaintiff argues that she would be unable to perform the

26   job of an assembler because it requires constant handling and fingering.  However, the ALJ

27   found that Plaintiff was limited in forceful gripping and grasping, but found no other limitations

28   on Plaintiff's ability to use her hands.

1    While Plaintiff argues that she would not be able to perform the jobs identified by the

2    VE, the Court has found that the ALJ did not err in making his disability findings regarding

3    Plaintiff's hand and mental disabilities.  The hypothetical presented to the VE was consistent

4    with the ALJ's disability findings.  However, Plaintiff contends that the ALJ erred because there

5    is a conflict between his finding that Plaintiff was only able to perform simple, repetitive tasks,

6    and the reasoning level of two of the jobs which the VE found she would be able to perform.

7    The reasoning level gauges the minimal ability a worker needs to complete the tasks of

8    the job.  Pak v. Astrue, No. 5:08-cv-00714-OP, 2009 WL 2151361, at *7 (C.D.Cal. July 14,

9    2009).  The VE opined that Plaintiff can perform the job of assembler which requires a reasoning

10   level of 1, (ECF No. 16-4 at 1), and charge account clerk or order clerk which require a

11   reasoning level of 3, (ECF No 16-2 at 1; ECF No. 16-3 at 1).  The weight of authority in this

12   circuit finds that a person limited to simple, repetitive tasks is precluded from performing work

13   that requires level 3 reasoning.  Torrez v. Astrue, No. 1:09-cv-00626-JLT, 2010 WL 2555847, at

14   *8 (E.D.Cal. June 21, 2010); see Pak, 2009 WL 2151361, at *7 (reasoning level 3 conflicts with

15   prescribed limitation that claimant can perform simple, routine tasks); Tudino v. Barnhart, 2008

16   WL 4161443, at *11 (S.D.Cal. Sept. 5, 2008) ("Level-two reasoning appears to be the breaking

17   point for those individuals limited to performing only simple repetitive tasks."); Espinoza v.

18   Astrue, No. 5:12-cv-00544-OP, 2013 WL 327889, at *3 (C.D.Cal. Jan. 29, 2013) (recognizing

19   that the Ninth Circuit has not addressed the issue directly, but "the weight of authority in this

20   Circuit holds that a limitation to simple, repetitive or routine tasks is incompatible with a

21   reasoning level of 3").

22   However, the error in accepting the VE opinion regarding the jobs of account clerk and

23   order clerk would be harmless if there are a significant number of jobs that Plaintiff would be

24   able to perform based on the remaining job the VE found Plaintiff would be able to perform.

25   There is no bright-line rule for what constitutes a significant number of jobs.  Beltran v. Astrue,

26   700 F.3d 386, 389 (9th Cir. 2012).  If the court finds that there are a significant number of jobs

27   that the claimant can perform at either the local or national level, it must affirm the ALJ's

28   decision.  Beltran, 700 F.3d at 390.

1    The VE testified that Plaintiff would be able to perform the job of assembler, which only

2   requires a reasoning level of 1.  Additionally, the VE testified that there are 2,600 jobs statewide

3   and 26,000 nationally for the job of assembler.  Comparing these numbers with the number of

4   jobs other courts have found to constitute a significant number of jobs, the Court finds that a

5   significant number of jobs are available which Plaintiff would be able to perform.  See Albidrez

6   v. Astrue, 504 F.Supp.2d 814, 824 (C.D.Cal. 2007) (1,445 regional and 17, 382 national jobs is

7   significant number); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (between 1,000 and

8   1,500 jobs regionally is significant number); Barker v. Secretary of Health and Human Services,

9   882 F.2d 1474, 1479 (9th Cir. 1989) (2,466 jobs in region is significant number); Cf. Beltran,

10  700 F.3d at 390 (finding 135 regional jobs and 1,680 nationally not a significant number);

11  DiMartino v. Astrue, No. 2:09-cv-1097-JCC, 2010 WL 2196098, at *3 (W.D.Wash. May 27,

12  2010) (100 jobs regionally and 5,000 nationally is not significant number).

13    Because any error that occurred by the ALJ accepting the opinion of the VE that Plaintiff

14  would be able to perform the jobs of charge clerk or order clerk was harmless, Plaintiff's appeal

15  of the denial of Social Security benefits is denied.

16                                              **V.**

17                            **CONCLUSION AND ORDER**

18    Based on the foregoing, the Court finds that the ALJ did not err in determining Plaintiff's

19  hand and mental health limitations or in determining that Plaintiff was able to perform work

20  which was available in the national economy.  Accordingly,

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Kristi Leeann Duke.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **May 13, 2013**

UNITED STATES MAGISTRATE JUDGE

22